TOWN OF FRANKLIN v. THE HERMITAGE ENGINEERING CO., et al.

Middle Section. June 11, 1930.

Wallace J. Smith, of Franklin, for plaintiff in error, Town of Franklin.

Keefe & Denny, of Nashville, for the Engineering Co.

Keeble, Seay, Stockell & Keeble, of Nashville, for the Surety Co.

CROWNOVER, J. This was an action by the town of Franklin against the Hermitage Engineering Co., of Nashville, and the Aetna Casualty & Surety Co., of Hartford, Conn., surety on its bond, to recover for breach of a contract to furnish material for and to install plumbing in a high school building in the town of Franklin.

The declaration as amended averred that the plaintiff and the defendant Engineering Co. entered into a written contract by which the Engineering Co. contracted and agreed to furnish the materials and to perform all work in connection with the plumbing and heating of a high school building in the town of Franklin, then being erected by the plaintiff; that the defendant Engineering Co. executed bond in the sum of $13,801 with the Aetna Casualty & Surety Co. of Hartford, Conn., as surety thereon for the faithful performance of the contract and to satisfy all claims and demands incurred for the same; that (1) the Engineering Co. "as a part of its contract, and by a subsequent contract in parol, . . . contracted and agreed to install a pump in said high school building of sufficient capacity and power to force an ample and adequate supply of water into all parts of said building," the water works system of Franklin not having sufficient pressure to operate the plumbing on the second floor; that the pump as installed was not of sufficient force, power and capacity to provide sufficient water; and (2) that the toilets on the second floor of said building were installed with defective or improper mechanism so that they do not properly flush, to the plaintiff's damage in the sum of $1500.

Both defendants pleaded the general issue; and later, after the declaration was amended, as hereinabove stated, the Surety Co. then filed additional pleas of non assumpsit, nil debet and a special plea of the statute of limitations in that the bond provided that no action should be brought after twelve months from the day on which final payment falls due, and that the declaration was amended so as to sue on the parol contract as to the booster pump after twelve months had expired, and therefore was barred.

The plaintiff joined issue on all the pleas, and the case was heard by the judge and a jury.

After the examination of the first two witnesses by the plaintiff, motions for a directed verdict for both defendants were sustained and the action was dismissed, on the grounds that the agreement as

to the pump was a subsequent verbal contract, which specified the name, design and size of the pump, and there was no express or implied warranty of its fitness for any purpose.

Plaintiff's motion for a new trial having been overruled, it has appealed to this court and has assigned eight errors, which, when summarized, raise three propositions:

(1) That the court erred in directing a verdict, because there was material evidence to carry the case to the jury, and there was no evidence to sustain the action and judgment of the court.

(2) The court erred in failing to find that the pump and the plumbing fixtures were sold and installed under a warranty.

(3) The court erred in directing a verdict before the conclusion of proof.

The facts of this case, as shown by the pleadings and the plaintiff's proof, are that on January 16, 1926, the town of Franklin, a municipal corporation, entered into a written contract with the Hermitage Engineering Co., a Tennessee corporation, of Nashville, Tenn., in which defendant Engineering Co. contracted and agreed to supply the materials and perform all work in connection with the plumbing and heating of a high school building then being erected by said town, the work to be done under the direction of plaintiff's architect.

To guarantee the faithful performance of the contract defendant Hermitage Engineering Co. executed to the plaintiff a bond in the sum of $13,801, with the Aetna Casualty & Surety Co. of Hartford, Conn., as surety thereon.

The contract contained the following stipulation:

"ARTICLE III. No alterations shall be made in the work except upon written order of the architect; the amount to be paid by the owner, or allowed by the contractor, by virtue of such alterations to be stated in said order."

The contract provided that the specifications for plumbing, etc. were made a part of the same, but there was no mention in the contract or specifications of a booster pump.

Soon after the execution of the contract it was discovered by said Engineering Co. that the pressure in the water main was not great enough to furnish sufficient force in the high school building, especially on the upper floor, to operate the plumbing fixtures. A verbal agreement was then made between the town and the Engineering Co. for said Engineering Co. to supply and install a booster pump which it was represented would furnish sufficient pressure in said building, for the price of $497.

The Engineering Co. represented to the town that such pump would remedy the low pressure in the main and force sufficient

water to the second floor, which representations were relied upon· by the town's representatives.

The pump was installed but failed to raise water with sufficient force to operate the plumbing fixtures in an efficient manner. When the Mayor complained to the Engineering Co., it removed the first pump, which was a one-horse power pump, and installed a two-horse power pump, which also failed to supply sufficient water and proved to be unsatisfactory.

On September 3, 1926, the architect certified that the work was completed, and the town of Franklin paid to the Engineering Co. the amount of the contract price.

The town, through its agent, the architect, complained repeatedly to the Engineering Co. that the pump was furnishing an insufficient supply of water of insufficient force, and that the mechanisms of the toilets were defective. The Engineering Co. refused and neglected to do anything about the pump or the toilets. Wherefore, the plaintiff brought this suit against the Engineering Co. and its surety on the bond.

The defendant introduced no proof to contradict this evidence and the court directed a verdict as hereinbefore stated.

The first and second assignments of error are well taken and must be sustained. The defense of the Surety Co. is that that part of the suit for damages about the booster pump was not a part of the original written contract for which it was surety but was a separate and independent verbal contract not covered by the bond. While it is the insistence of the plaintiff that the addition of the pump was an amendment of or addition to the original contract and that the pump was treated as a part of the original specifications and the cost price was added to the total estimates, making the whole one lump sum. The plaintiff's proof tended to sustain this proposition and was sufficient to carry the question to the jury. The bond contained a paragraph as follows:

> "And provided, that any alterations which may be made in the terms of the contract or in the work to be done under it, or the giving by the owner of any extension of time for the performance of the contract or any forbearance on the part of either the owner or the principal to the other shall not in any way release the principal or the surety or sureties, or either or any of them, their heirs, executors administrators, successors, or assigns from their liability hereunder, notice to the surety or sureties of any such alteration, extension or forbearance being hereby waived."

Of course, a separate and independent verbal contract for the installation of the booster pump, not to be a part of the original specifications, could have been made. But, whether one was made

or not, was a question for the jury, after hearing the proof on both sides. 13, C. J., 781, 789, secs: 988, 1009.

If the contract for the pump was a separate and independent contract, in no way connected with the original contract and not covered by the bond, then the Surety Co. is not liable for the breach of the contract as to the pump, but it may be liable for damages for the other defective plumbing covered by the bond.

It is the insistence of the plaintiff, and the evidence tends to sustain its position, that the pump was installed under the representation that it would do the work satisfactorily, that the representatives of the town of Franklin had no knowledge about the pump or whether it would be sufficient, but relied upon the representations made by the Engineering Co.

"Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon." Uniform Sales Act of 1919, ch. 118, sec. 12.

The question whether there was an express warranty is one of fact for the jury. Uniform Laws Annotated, Sales Act, vol. 1, p. 60; Cotton Oil Co. v. Union Gin Co., 138 Tenn., 58, 66, 195 S. W., 770.

The defendants relied upon sub-section 4 of section 15 of the Uniform Sales Act of 1919, which provides:

"In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose."

The trial judge relied upon this section and directed a verdict for the defendants. In this, we think he erred, and that he had overlooked sub-sec. one of sec. 15 of said Uniform Sales Act, which provides:

"Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill and judgment (whether he be the manufacturer or grower or not), there it an implied warranty that the goods shall be fit for such purpose." Uniform Sales Act of 1919, ch. 118, sec. 15, sub-sec. 1; 1 Williston on Sales (2 Ed.), sec. 235; Southern Brass & Iron Co. v. Exeter Mach. Works, 109 Tenn., 67, 72, 70 S. W., 614.

"Where there is a breach of warranty by the seller, the buyer may, at his election—

.     .     .     .     .     .

(b) Accept or keep the goods and maintain an action against the seller for damages for the breach of warranty." Uniform Sales Act of 1919, ch. 118, sec. 69.

Hence the two assignments of error on the subject of warranty of fitness must be sustained.

The third assignment, that the court erred in directing the jury to return a verdict in favor of the defendants before the plaintiff was permitted to conclude its proof, is well made and must be sustained.

The plaintiff asked leave of the court to introduce J. E. Hall, one of the building committee of Franklin, who would have testified that Mr. Hailey of the Engineering Co. represented to the building committee before the particular pump was installed, that if permitted to put in that pump at the expense of the town, it would furnish an adequate supply of water on the second floor of the school building of sufficient force to operate the plumbing fixtures, which was refused by the court. We think the testimony was material and that the court erred.

"We think, however, that, wherever the jury is directed to return a verdict, it should be upon a consideration of the entire evidence in the case, and not upon any detached portion of such evidence." Greenlaw v. R. R., 114 Tenn., 187, 86 S. W., 1072; Norman v. R. R., 119 Tenn., 401, 421-2, 104 S. W., 1088.

"If there is any dispute as to any material fact, the case must go to the jury." Traction Co. v. Brown, 115 Tenn., 323, 331, 89 S. W., 319; Stanley Bird Motor Co. v. Alley, 1 Tenn. App., 202; 26 R. C. L., 1067-8, sec. 75; 38 Cyc., 1566-7.

"Taking the bill of exceptions into consideration the learned trial judge had no right to stop the introduction of evidence in its midst and direct a verdict." King v. Dunlap, 4 Hig., 581.

This assignment of error must be sustained.

The Surety Co.'s contention that the amendment of the declaration to show that the contract as to the booster pump was verbal instead of written, was a new cause of action, is not well made. The original declaration stated that the contract with respect to the pump was written and the amendment only went to the extent of averring that the original written contract was subsequently altered by a verbal amendment as to the booster pump and that it was a part of the original contract. This amendment was made more than a year after the original suit was instituted and the defendant Surety Co. therefore pleaded the contractual limitation as a bar to the action.

An amendment of a declaration which sets up no new cause of action or claim and makes no new demand, relates back to the commencement of the action, and the running of the statute against the claim so pleaded is arrested at that point. 37 C. J., 1068; Macklin v. Dunn, 130 Tenn., 342, 170 S. W. 588; Love v. Sou. R. R. Co., 108 Tenn., 104, 65 S. W., 475; Southern R. R. Co. v.

Simpson, 131 Fed., 705; New York Cent. R. R. Co. v. Kinney, 260 U. S., 340, 67 L. Ed., 294. But where the amendment introduces a new cause of action then it does not relate back to the beginning of the action so as to stop the running of the statute of limitations. 37 C. J., 1074; East Tenn. Iron Co. v. Broyles, 95 Tenn., 612, 32 S. W., 761.

The original suit was an action of assumpsit, and the cause of action was not changed by the amendment. It was still an action of assumpsit. Assumpsit is a proper remedy for the breach of any simple or unsealed contract, whether verbal or written, express or implied. 5 C. J., 1380-3; Shipman's Common Law Pleading (3 Ed.), 148.

An action of assumpsit for damages for the breach of warranty of soundness or fitness, express or implied, in the sale of personalty, is a proper remedy. 3 Williston on Contracts, secs. 1504-5; 35 Cyc., 444, note 9.

Of course, where one brings a suit on a written contract he cannot recover on proof of a verbal contract, or where one sues on an express contract he cannot recover on an implied contract, on account of variance in the pleading and proof. Hunter v. Litterer, 1 Baxter, 168; 22 Ency. of Plead. & Pract., 626. But variance is not the test, as a variance in the pleading and proof may arise in many instances in the same cause of action. Birmingham v. Shirley, 209 Ala., 305, 96 So., 214, 215.

> VARIANCE. "The rule that the allegations and proof must correspond is intended to answer the double purpose of distinctly and specifically advising the opposite party of what he is called upon to answer, so as to enable him properly to make out his case and to prevent his being taken by surprise in the testimony at the trial, and of preserving an unerring record of the cause of action as a protection against another proceeding based upon the same cause." 22 Ency. of Plead. & Pract., 537-8.

Where the plaintiff has sued on an express contract he may amend his declaration so as to sue on an implied contract and there will be no new cause of action. 37 C. J., 1078.

The test of whether or not an amendment introduces a new cause of action is determined by (1) would the same evidence support both of the pleadings, and (2) is the measure of damages the same in each case. Mellon v. American Flour & Grain Co., 9 Tenn. App., 383, 390; 37 C. J., 1076.

In this case the evidence is the same and the measure of damages is the same. The amendment did not create a new cause of action, and the Surety Co.'s contention is not well made.

It is next contended by the defendant Surety Co. that the obligee under a building contract cannot pay the contractor all that is due

for the completion of the work and then undertake to hold his surety for failure to complete it satisfactorily. There are several cases that hold that premature payment of contract price will release the surety on the contractor's bond. McLendon v. Bromley, 3 Higgins, 494; Little & Dean v. Fidelity & Deposit Co., 3 Tenn. App., 157. But this contention is not well made for the reason that the Surety Co. agreed in its bond that any alteration which might be made in the terms of the contract should not in any way release the principal or surety, as hereinabove set out. Henc, any subsequent alterations, either verbal or in writing, made by the principal parties, is binding on the surety and does not releas the bond.

It results that all the assignments of error must be sustained, the judgment reversed and the cause remanded to the Circuit Court of Davidson County for a new trial in accordance with this opinion.

The cost of the appeal is adjudged against the defendants, for which execution may issue, but the cost of the lower court will await the final determination of the case.

Faw, P. J., and DeWitt, J., concur.