DRAPER et al. v. DRAPER et al.—147 S. W. (2d) 759.

Middle Section.    November 16, 1940.

Petition for Certiorari denied by Supreme Court, February 15, 1941.

P. J. Anderson, W. C. Anderson, and George B. Haile, all of Gainesboro, and Worth Bryant, of Cookeville, for appellant solicitors.

Bailey C. Butler, of Gainesboro, and Louis Chambers, of Lebanon, for appellees Cunningham.

CROWNOVER, J. This is a suit for counsel fees alleged to have been incurred for the benefit of the estate of R. L. Draper, deceased.

Three separate petitions were filed in this cause, one each by George B. Haile, Worth Bryant, and Anderson & Anderson.

R. L. Draper died intestate in the year 1935, the owner of personalty of the value of about $65,000 and valuable real estate.

C. C. Cunningham and J. B. Cunningham, Jr., were appointed and qualified as administrators of his estate.

Lucy B. Vanhooser inherited a small interest in the realty. Soon after his death she filed a petition in the County Court, by her attorneys, P. J. Anderson and W. C. Anderson, to sell all of his land for partition, and made his other next of kin and collateral heirs parties defendant to the suit. Most of the defendants entered their appearances and filed answers and cross-petitions asking for a sale of the land.

Some time after the petition for the sale of the land was filed, some of the heirs filed a bill in the Chancery Court and obtained an injunction staying proceedings in the County Court, and insisted that the title to the property should be settled and the land sold in the Chan-

cery Court. This suit and orders made therein were superseded by the Court of Appeals and afterward dismissed.

Bailey C. Butler was employed to represent the two principal heirs, Smith Cunningham and J. B. Cunningham, Sr., uncles of R. L. Draper, who inherited the whole personal estate and each inherited an interest in the realty, and he also represented the administrators and a number of the other Cunningham heirs. George B. Haile represented some of the Cunningham heirs, and Worth Bryant some of the Draper heirs. Anderson and Anderson represented Lucy B. Vanhooser, one of the heirs to the realty.

Later, Blanche Draper and Walter Draper, through their solicitors, Hinson & Hinson, of Lebanon, and J. M. Chamberlin and C. B. Latimore, of Glasgow, Kentucky, filed a bill in the Chancery Court at Gainesboro against their mother, Mary Stafford Draper, and made the parties in the County Court proceeding defendants, in which bill they alleged that the decedent, R. L. Draper, had married their mother, and that they and several other children of Mary Stafford were the legal heirs of R. L. Draper, and prayed that they be decreed to be the owners of his property, and asked that the proceedings in the County Court be enjoined.

All the defendants except Mary Stafford filed answers and denied that R. L. Draper had married Mary Stafford and denied that Mary Stafford and her children were the legal heirs of the decedent.

A jury was demanded in the Chancery Court case and much evidence was heard, the complainants introducing a preacher who testified that he performed the marriage ceremony, and other parties who testified that they witnessed the ceremony. But much evidence was introduced tending to disprove that such marriage ceremony was performed. Testimony was heard for several days. The case was submitted to the jury, which disagreed, and a mistrial was entered.

The case was then removed to the United States District Court, but afterward remanded to the Chancery Court.

Later this Chancery case was compromised by agreement of all the parties. It was agreed that Mary Stafford and her children could be paid the sum of $20,000 out of the estate of R. L. Draper, $10,000 of said sum to be paid out of the personalty and $10,000 out of the proceeds of the realty; and it was further agreed that the suit would be dismissed as to Blanche Draper, Mary Stafford Draper et al. upon the payment of said sum.

Pending the proceedings in the Chancery Court, the injunction was modified so as to permit the parties to take depositions in the County Court proceedings, and the preacher and one of the witnesses to the marriage ceremony were examined at great length, apparently with a view of ascertaining what their testimony would be in the Chancery case.

The administration of the estate of R. L. Draper was transferred to the Chancery Court and said estate is being administered in this cause of Blanche Draper et al. v. Mary Stafford Draper et al.

The question as to the personal property was tried by the Chancellor and resulted in a decree that Smith Cunningham and J. B. Cunningham, Sr., the only living uncles of R. L. Draper, should inherit the personal property, as next of kin, to the exclusion of his cousins. This case was appealed to the Supreme Court where it was affirmed. 174 Tenn., 394, 126 S. W. (2d), 307.

Later, the land was sold for partition in the County Court, the proceeds to be divided among the heirs, after the payment of $10,000 to Mary Stafford and her children.

The petitions in this cause, which are now before this court, were filed by Anderson and Anderson, Worth Bryant, and George B. Haile in the Chancery Court in the cause of Blanche Draper et al. v. Mary Stafford Draper et al., to recover solicitors' fees from the personal estate of R. L. Draper, deceased, which is inherited by his two uncles, Smith Cunningham and J. B. Cunningham, Sr., on the ground that their work in representing some of the heirs in this case preserved the Draper estate and inured to the benefit of all the heirs. And they contend that the administrators are liable to them on a quantum meruit basis on the doctrine of implied liability, and that their fees should be paid out of said estate because their work was beneficial to it.

Worth Bryant, in his petition, further alleges that Bailey C. Butler, solicitor for the administrators and the uncles of the decedent and other Cunningham heirs, agreed that the Cunninghams should compensate him for the work he would have to do in this cause.

These original petitions also asked for compensation for their services in the partition suit in the County Court in the cause of Lucy B. Vanhooser et al. v. Smith Cunningham et al., but these claims for services rendered in the partition case were later withdrawn in this cause as they are seeking fees in the partition suit.

The administrators and Smith Cunningham and others demurred to said petitions, which demurrers were overruled. And they answered and alleged that the petitioners were not employed by said administrators or Smith Cunningham or J. B. Cunningham, Sr., but were employed by other heirs whose claims were adverse to their claims, therefore they should be paid their fees by those who employed them.

A jury having been demanded, the cause was heard by the Chancellor and the jury.

The evidence for the solicitors was as to the amount of work done by them in defending the suit of Mary Stafford Draper and her children, which suit, if successfully maintained by said Mary Stafford Draper and her children, would have given them the entire Draper estate.

The defense of the administrators of the Draper estate was that they did not employ these solicitors as they had their own solicitors.

The following issues were tendered by petitioners for the jury:

"(1) Did the legal services rendered in this cause by P. J. Anderson and W. C. Anderson inure to the benefit of the owners of the personal estate of R. L. Draper, deceased, in the preservation and protection of said estate, wherein title was claimed by Mary Stafford and her children?

"(2) What is a fair and reasonable value of services so rendered by P. J. and W. C. Anderson?

"(3) Did the legal services rendered herein by Worth Bryant inure to the benefit of the owners of the personal estate of R. L. Draper, deceased, in the preservation and protection of said estate, wherein title was claimed by Mary Stafford and her children?

"(4) Did B. C. Butler who had been employed to represent owners of the personal estate of R. L. Draper, deceased, agree to see to it, that, Worth Bryant should be compensated therefor by the clients of said B. C. Butler?

"(5) What is the fair and reasonable value of the services rendered in this cause by said Worth Bryant, with reference to said personal estate?

"(6) Did the legal services rendered in his cause by George B. Haile, inure to the benefit of the owners of the personal estate of R. L. Draper, deceased?

"(7) What is the fair and reasonable value of services rendered in this cause by George B. Haile, with reference to the personal estate?

"(8) Where services rendered in this cause by the petitioners, Worth Bryant, George B. Haile and P. J. and W. C. Anderson, rendered under such conditions and circumstances, in the preservation of the personal estate, as would entitle them to be compensated out of the assets of the personal estate, in the hands of the Clerk and Master of this court, and/or in the hands of the administrators?"

But at the conclusion of the evidence the defendants moved the court for peremptory instructions in their favor. Whereupon the Chancellor withdrew the issues from the jury and found in favor of the defendants and dismissed the petitions at the petitioners' cost.

The petitioners' motion for a new trial was overruled, and they appealed to this court and have assigned errors, which raise only the proposition—Whether solicitors for some of the heirs may be paid out of the fund in court fees for their services which were beneficial to the estate.

The petitioners base their right of recovery on an implied contract. And it is admitted that there was no express contract of employment between them and the administrators or Smith Cunningham and J. B. Cunningham, Sr., heirs to said personal estate (except as to Worth Bryant), but they contend that they rendered valuable services to said estate and a promise to pay the reasonable value of such services is presumed.

But in this case we think no agreement on the part of the administrators or heirs to the personalty to pay for the services so rendered can be implied. And this is not a case in which their fees can be paid out of the common fund in court.

The administrators and the two Cunninghams who inherited the personal estate had employed Bailey C. Butler, an attorney, who was representing them. The petitioning solicitors were employed by other parties to the suit. In defending the suit of Mary Stafford Draper and her children (which if successful would have taken the whole estate), the success of the Cunningham and Draper heirs was necessarily of benefit to each and all of them, as they were all heirs to the realty.

■ The relation of attorney and client is created by contract, and litigants who have not thus assumed liability for attorney's fees can not generally be held liable therefor, although they have been benefited, directly or indirectly, by the attorney's services. 2 R. C. L., 1052, sec. 136.

"The mere fact that the services which an attorney renders his client are beneficial to a third person . . . does not entitle the attorney to recover compensation from the person or persons thus benefited." 5 Am. Jur., 352-353, sec. 155; O'Doherty & Yonts v. Bickel, 166 Ky., 708, 179 S. W., 848, Ann. Cas. 1917A, 419, and cases cited; Forman v. Sewerage & Water Board of New Orleans, 119 La., 49, 43 So. 908, 12 Ann. Cas., 773, and cases cited.

"While it has been held that where an attorney represents a party to a suit, the presumption arises that the services are rendered with the consent of the party, yet if more than one party is interested in the suit, it does not follow, because the attorney is employed by one of the parties and acts in the case with the knowledge of the other parties, that the latter, in order to escape liability, should inform the attorney that they will not consider themselves liable." 2 R. C. L., 1033, sec. 115; 5 Am. Jur., 352, 353, sec. 155.

■ The personal estate was in the custody of the court. It was neither created, increased, nor otherwise added to by such counsel.

"Equity may allow counsel fees to complainant who has maintained successful suit for preservation, protection, or increase of common fund, or who has created or brought into court such fund, but cannot allow counsel fees in ordinary adversary proceedings." Christian Women's Benev. Ass'n v. Atlanta Trust Co., 181 Ga. 576, 183 S. E., 551.

The petitioners' fees could not be allowed out of this fund because their clients' interests were adverse to it. 7 C. J. S., Attorney and Client, 1097, sec. 193; 6 C. J., 783, sec. 394.

The petitioners rely on the case of Scott v. Marley, 124 Tenn., 388, 137 S. W., 492. But that case was a partition suit, and the fees of the

attorneys for the complainant and defendant were ordered to be paid out of the common fund under Code, sec. 9190, which provides:

"The court may, in its discretion, order the fees of the attorneys for the complainant and defendant to be paid out of the common fund, where the property is sold for partition, and taxed as cost in cases where the property is partitioned in kind."

It results that we hold that there was no implied contract between the solicitors and the administrators or the owners of the personal estate, and that such fees could not be paid out of this fund.

Petitioner Worth Bryant further insists that after the suits had progressed to some extent he realized that the litigation was going to be greater than he had anticipated, and he thereupon took up the matter of fees with Bailey Butler, solicitor for the administrators, and told him that his own clients' interests would not justify the work necessary to be done in the suits, and asked Butler whether he (Bryant) should talk with the administrators about an additional fee, to which Butler replied that he agreed with him as to the matter, and agreed that he would see to it that Bryant was paid out of the Cunningham interests.

Butler denies this agreement, and insists that he agreed to see his clients about it, but forgot to mention it to them until after the services were rendered.

However, this controversy is immaterial, as Butler and the administrators all testified that Butler had no authority to employ an attorney, and this evidence is not controverted.

It is well settled that an attorney at law who is employed in particular cases has no general authority, by virtue of his retainer, to employ other counsel, as an assistant or associate counsel, at the expense of his client, and the employment of such associate is not within the apparent scope of his authority. 6 C. J., 668, 669, sec. 181; Orwig v. Chicago, etc., R. Co., 217 Iowa, 521, 250 N. W., 148, 90 A. L. R., 258, 263; Northern P. R. Co. v. Clarke, 9 Cir., 106 F., 794; Young v. Fowler, 132 Ark., 145, 200 S. W., 813; Chicago & S. Traction Co. v. Flaherty, 222 Ill., 67, 78 N. E., 29; Porter v. Elizalde, 125 Cal., 204, 57 P., 899; 7 C. J. S., Attorney and Client, 939, sec. 107; 90 A. L. R. (Notes) 266, 267.

It is further insisted by Anderson and Anderson that one of the administrators told young Mr. Anderson, while discussing the litigation at a drug store, after the bill was filed by Mary Stafford's children, that "they were depending on his father (P. J. Anderson) to help select a jury, and wanted us to do all we could in regard to the litigation . . . and he was looking to us to do all we could to defeat the claim of Mary Stafford and her children. . . . He said to help organize the jury and help fight the case." He was asked: "Did he say that he had employed your father?" To which he replied: "No, sir."

■ As stated, the petition is based on an implied contract, and no issue on whether there was either an express or implied agreement was submitted by them to the court for the jury. Under such circumstances the question was one for the Chancellor who has resolved the issue in favor of the defendants.

"The party applying for a jury trial must submit material issues; and if he fails so to do the verdict will be immaterial, and the court may, thereupon, determine the case as though no jury trial had taken place, if the record is in condition to justify that course." Gibson's Suits in Chancery (4 Ed.), sec. 549; Crabb v. Cole, 19 Tenn. App., 201, 209, 84 S. W. (2d), 597; Carpenter v. Wright, 158 Tenn., 289, 13 S. W. (2d), 51.

■■ Where the suit is on an implied contract the plaintiff cannot recover on an express contract. 13 C. J., 749, sec. 909; 17 C. J. S., Contracts, 1204, sec. 569b; Hermitage Engineering Co. v. Franklin, 12 Tenn. App., 434; Cooksey v. Shanks, 23 Tenn. App., 595, 136 S. W. (2d), 57. But a variance between the allegations and the proof cannot be raised for the first time in the appellate court. Ragsdale v. Dyer, 150 Tenn., 496, 266 S. W., 91.

We think the Chancellor was correct in deciding this issue as the parties had not presented such issue to him for the jury.

■ The testimony on this question was sharply controverted by the administrator who denied that such conversation took place. The burden was on the petitioner, and the Chancellor evidently decided that he had not carried it and that there was in fact no express contract, as P. J. Anderson testified: "I had no express contract with any individual. Naturally, I expected to be paid out of the estate something reasonable for what I had done; they knew what I was doing for the personal estate was more valuable than it could have been done to the real estate, etc."

■ We agree with the Chancellor that petitioners failed to carry the burden on the proposition that there was an express contract.

■ We also agree with the Chancellor that there were no material issues to be submitted to the jury, as there are no controverted questions of fact. He was therefore correct in withdrawing the issues from the jury and deciding the case himself. Carpenter v. Wright, 158 Tenn., 289, 13 S..W. (2d), 51.

All the assignments of errors are overruled and the decree of the Chancellor dismissing the petitions is affirmed. The costs of the cause including the costs of the appeal are adjudged against the appellants and the sureties on their appeal bond.

Faw, P. J., and Felts, J., concur.