In re David A. CRABTREE also known as West Knoxville Investment Company, Inc., Debtor.

CRABTREE HOLDING COMPANY, INC., Plaintiff,

v.

Brenda B. CRABTREE, Defendant.

Bankruptcy No. 3–83–01116.
Adv. No. 3–85–1164.

United States Bankruptcy Court,
E.D. Tennessee.

July 27, 1987.

Haynes, Meek, Summers & Mabry, Cecil D. Meek, Jr., Knoxville, Tenn., for defendant.

Cadwalader, Wickersham & Taft, Mark C. Ellenberg, David F. Williams, Washington, D.C., Walker & Walker, P.C., John A. Walker, Jr., Knoxville, Tenn., for plaintiff.

## MEMORANDUM

RICHARD STAIR, Jr., Bankruptcy Judge.

On September 5, 1985, plaintiff[1] filed a complaint asserting that two tracts of real estate formerly owned by David A. Crabtree (debtor) and Brenda B. Crabtree, but conveyed to plaintiff by two separate warranty deeds dated January 3, 1983, and recorded in the office of the Knox County Register of Deeds on March 21, 1983, are property of the estate of David A. Crab-

---

1. D. Broward Craig, Trustee for the estate of David A. Crabtree (Craig), was the original plaintiff in this proceeding. Conceding subsequent to trial that Crabtree Holding Company, Inc. and David A. Crabtree are two distinct entities, the parties presented the court with an agreed order substituting Crabtree Holding Company, Inc. as plaintiff. This order was entered March 31, 1987, *nunc pro tunc* for September 5, 1985. The court notes that on July 14, 1983, Crabtree Holding Company, Inc. amended its charter changing its name to Dallas Investments, Inc. This amendment was filed in the office of the Tennessee Secretary of State on July 15, 1983. It thus appears that the proper party in interest is Dallas Investments, Inc. As matters in dispute relate to transfers to Crabtree Holding Company, Inc., the court will not concern itself with this corporate name change.

tree.[2] Plaintiff further contends that a quitclaim deed dated April 4, 1983, from the debtor to Brenda Crabtree is a cloud on its title to the two tracts. Plaintiff requests removal of the cloud on its title to the property.[3]

Defendant contends the January 3, 1983 deeds to plaintiff bearing her signature are voidable for fraud, lack of consideration, and mutual mistake. According to defendant, she and the debtor intended that she receive the two tracts as part of a property settlement in connection with divorce proceedings in the Knox County Chancery Court.

This is a noncore proceeding. Both plaintiff and defendant have consented to the entry of appropriate orders and judgments by the bankruptcy court. 28 U.S.C.A. § 157(c)(2) (West Supp.1987).

## I

The debtor and his former wife, defendant Brenda Crabtree, acquired ownership of the two tracts of real estate in dispute on November 25, 1977. Both tracts are in the Ridgeland Subdivision, Knox County, Tennessee; tract 1 is identified as Lot 23; tract 2 as the 4.89–acre lot. The two lots are more particularly described as follows:

*Tract 1*

SITUATED in District No. Six (6) of Knox County, Tennessee, and without the corporate limits of the City of Knoxville, and being known and designated as all of Lot 23, Ridgeland Subdivision, as shown by map of record in Map Book 65–S, page 71 in the Register's Office for Knox County, Tennessee, and to which

map specific reference is hereby made for a more particular description.

*Tract 2*

BEGINNING at an iron pin in the North line of Ridgeland Drive, corner to Lot 23, Ridgeland Subdivision, Unit 1, said pin being located 1368.98 feet Southwest of Walden View Lane; thence, from said beginning point with the line of Ridgeland Drive, South 62 deg. 25 min. West, 18.41 feet to a point; thence, continuing with the line of Ridgeland Drive, South 63 deg. 29 min. West, 6.6 feet to an iron pin, corner to Beeler; thence, with the Beeler line, North 26 deg. 31 min. West, 157.12 feet to an iron pin; thence, South 57 deg. 53 min. West, 668.87 feet to an iron pin; thence, North 27 deg. 21 min. West, 347.96 feet to an iron pin in the Southern line of Proffitt; thence, with the Proffitt line, North 65 deg. 29 min. East, 640.63 feet to an iron pin, corner to A.H. Proffitt; thence, North 55 deg. 26 min. East, 50.25 feet to an iron pin; thence, South 27 deg. 45 min. East, 267.-53 feet to an iron pin; thence, South 26 deg. 31 min. East, 156.77 feet to an iron pin, the place of BEGINNING; according to the survey of Batson and Himes, Engineers, dated November 17, 1977.

The debtor and Brenda Crabtree executed two warranty deeds, bearing the date January 3, 1983, transferring their interest as tenants by the entireties in Lot 23 and the 4.89–acre lot to plaintiff.[4] The defendant testified that in January, 1983, she and the debtor were contemplating divorce; that she did not discuss with the debtor the transfer of the lots; that she would not have agreed and did not agree to transfer

---

**2.** Crabtree Holding Company, Inc./Dallas Investments, Inc. is a corporation whose common stock, as an asset of the Crabtree estate, is controlled by Craig. The complaint asserts that the two lots in dispute are assets of the debtor's estate. The lots are titled to Crabtree Holding Company, Inc. and any benefit realized by the estate will be in the value of the common stock. Conforming plaintiff's pleadings to the evidence, the court deems the complaint amended to request relief on behalf of Crabtree Holding Company, Inc. and not the debtor's estate. Fed. R.Bankr.P. 7015.

**3.** Plaintiff also originally sought injunctive relief to preserve a sale and damages. The request for an injunction was withdrawn on September 16, 1985; the claim for damages was dismissed during the trial.

**4.** While the circumstances surrounding defendant's execution of these deeds are in dispute, the signature on each deed purporting to be that of Brenda B. Crabtree is undisputedly the defendant's. The date the deeds were executed may or may not have been January 3, 1983.

her ownership interest in the Ridgeland Subdivision lots to plaintiff; that she did not intentionally and knowingly sign either of the two warranty deeds; that she did not appear before the notary public, Linda S. Bridges, who purportedly acknowledged her signatures; that she did not receive any money or other consideration for the transfer of the Ridgeland Subdivision properties to plaintiff; and that even though the signatures on the two warranty deeds dated January 3, 1983, appear to be hers, she did not know she was executing these deeds.

Brenda Crabtree further testified that after executing a written property settlement agreement on March 25, 1983, she negotiated with the debtor for the exclusive ownership of the two Ridgeland Subdivision lots when it became apparent she would receive only $14,000.00 from the sale of a residence owned by the parties as tenants by the entirety known as 11045 Farragut Hills Boulevard, Concord, Tennessee. Mrs. Crabtree testified this amount was considerably less than she expected to realize from the sale of the Farragut Hills property and that the two Ridgeland Subdivision lots were to compensate her for the loss of anticipated equity in the Farragut Hills property.

The defendant further testified that, in accordance with her agreement with the debtor, David A. Crabtree executed a quitclaim deed on April 4, 1983, in her favor transferring his interest in the two Ridgeland Subdivision lots. This deed contains the following statement: "THIS CONVEYANCE is being made pursuant to the terms and conditions of a Property Settlement Agreement entered into between the parties and incorporated in a Final Decree of Divorce granted in the Chancery Court for Knox County, Tennessee, Docket No. 78312." [5]

As has been noted, the January 3, 1983 warranty deeds from the debtor and Brenda Crabtree to plaintiff were recorded in

the office of the Knox County Register of Deeds on March 21, 1983. The April 4, 1983 quitclaim deed from the debtor to Brenda Crabtree was recorded on May 20, 1983. Neither the debtor nor Linda S. Bridges, the notary public who purportedly acknowledged the signatures of the debtor and Brenda Crabtree on the two January 3, 1983 warranty deeds, testified at the trial of this proceeding.

## II

The entire thrust of defendant's proof is that the January 3, 1983 warranty deeds to plaintiff are not effective as to her. She contends, however, that both deeds should be rescinded in their entirety and that she should be declared the owner in fee of the two Ridgeland Subdivision lots. Alternatively, defendant asserts that the two lots should be impressed with a constructive trust in her behalf. The court agrees in part.

The record is devoid of any evidence warranting a determination by the court that the January 3, 1983 warranty deeds are for any reason ineffective to transfer the interest of David A. Crabtree in the two Ridgeland Subdivision lots. There is no proof that the debtor did not execute the deeds; that his signature was not properly acknowledged before the notary public; that he did not receive any consideration; or that the deeds were involuntarily executed by him. The fact that the debtor and defendant were contemplating divorce in January, 1983, is not sufficient to avoid the transfer of the debtor's interest. The evidence does not establish any agreement on the debtor's part to transfer his interest in the two Ridgeland Subdivision lots to defendant prior to execution of the January 3, 1983 deeds.

The court concludes that the January 3, 1983 warranty deeds were effective to transfer the interest of David A. Crabtree in Lot 23 and the 4.89–acre lot to the plaintiff. Recordation of these deeds in the

---

**5.** Neither the March 25, 1983 "Child Custody, Child Support and Property Settlement Agreement" executed by the debtor and Brenda Crabtree nor the May 20, 1983 Final Decree of divorce entered in the Knox County Chancery Court makes any reference to the two Ridgeland Subdivision lots.

office of the Knox County Register of Deeds on March 21, 1983, provided "notice to all the world" that Crabtree Holding Company, Inc. acquired the interest of David A. Crabtree on January 3, 1983.[6] The April 4, 1983 quitclaim deed from the debtor to Brenda Crabtree was ineffective to convey any interest of David A. Crabtree in the Ridgeland Subdivision lots. The debtor had no interest to convey, his entire interest having been transferred to Crabtree Holding Company, Inc. on January 3, 1983.

The issue thus confronting the court is whether the January 3, 1983 deeds should be rescinded as to the interest conveyed by the defendant or, alternatively, whether a constructive trust should be imposed upon the interest of Brenda Crabtree in Lot 23 and the 4.89–acre lot. In either event, the defendant can assert no greater than a one-half undivided interest in each lot as a tenant in common with Crabtree Holding Company, Inc.

## III

█ The record undisputedly supports Brenda Crabtree's contention that she did not knowingly execute the two January 3, 1983 warranty deeds; that she did not receive any of the consideration, if any was given, associated with the transfer of the two Ridgeland Subdivision lots to plaintiff; and that she did not appear before the notary public who acknowledged her signatures. There is no proof to the contrary.

Mrs. Crabtree testified that in 1978 she and the debtor offerred the two lots for sale at a combined price of $44,000.00 and that in her opinion the lots had a market value of $55,000.00—$60,000.00 in January,

1983. Stipulated appraisals of Hop Bailey, Jr., a real estate appraiser, reflect the value of Lot 23 on March 15, 1985, at $10,-000.00 and the value of the 4.89–acre lot on April 16, 1985, at $24,500.00. Craig testified he has an offer to sell the 4.89–acre lot for the sum of $18,375.00. Although Mrs. Crabtree's assessment of the value of the two lots appears excessive, it is clear these lots are of considerable value today and were of considerable value in January, 1983. There is no proof that either lot is encumbered.

"It is well established that a constructive trust is an appropriate remedy to redress breach of a fiduciary or confidential relationship." *Chisholm v. Western Reserves Oil Co.*, 655 F.2d 94, 96–97 (6th Cir.1981) (footnote omitted). As is noted by Bankruptcy Judge Paine, acting as Standing Master, in *In re Anderson:*

Under both federal and Tennessee law, a court may create a constructive trust on behalf of a party if the court determines that "property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest." .... As District Court Judge Neese recently observed, constructive trusts are " 'judge-created' trusts which enable a court, without violating all rules of logic, to reach an interest in property belonging to one person yet titled in and held by another." *Gregory v. Binkley*, Civil Action No. 3–82–0036, slip op. at 4 (M.D. Tenn. Jan. 27, 1983).

*McAllester v. Aldridge (In re Anderson),* 30 B.R. 995, 1013 (M.D.Tenn.1983) (citations omitted).

---

6. Tenn.Code Ann. § 66–24–101 (Supp.1986) entitled "Writings eligible for registration," enacts in material part:

    (a) The following writings may be registered:

. . . . .

    (4) All deeds for absolute conveyance of any lands, tenements or hereditaments, or any estate therein;

. . . . .

Tenn.Code Ann. § 66–26–101 (1982) enacts that all the instruments mentioned in § 66–24–101 "shall have effect between the parties to the

same, and their heirs and representatives, without registration; but as to other persons, not having actual notice of them, only from the noting thereof for registration on the books of the register, unless otherwise expressly provided."

Tenn.Code Ann. § 66–26–102 (1982) entitled "Notice to all the world" provides that: "All of said instruments [mentioned in § 66–24–101] so registered shall be notice to all the world from the time they are noted for registration, as prescribed in § 8–13–108; *and shall take effect from said time.*" (Emphasis added.)

*Gibson's Suits In Chancery* defines constructive trusts under Tennessee law in the following terms:

Constructive trusts are so called because they are *constructed* by Courts of Equity in order to satisfy the demands of justice, without reference to any presumable intention of the parties. They include cases: (1) where a person procures the legal title to property in violation of some duty, express or implied, to the true owner; or (2) where title to property is obtained by fraud, duress, or other inequitable means; or (3) where a person makes use of some relation of influence or confidence to obtain the legal title upon more advantageous terms than could otherwise have been obtained; or, (4) where a person acquires property with notice that another is entitled to its benefits. In all such cases, Equity, for the purpose of doing justice in the most efficient manner, constructs a trust out of the transaction, and makes a trustee of the person thus acquiring the title.

*Gibson's Suits In Chancery*, § 383, at 361 (6th ed. 1982) (footnotes omitted).

Under the circumstances of the instant proceeding, it would be manifestly unjust for this court to deprive defendant of her interest in the two Ridgeland Subdivision lots. Crabtree Holding Company, Inc. obtained defendant's interest in these two lots by "inequitable means." From time to time the debtor presented documents to the defendant and told her to sign them because it was in her best interest. This is apparently what happened in this instance. Mrs. Crabtree was wrongly deprived of her interest in this property and the court cannot justify the perpetuation of this wrong. See *Hinton v. Robinson*, 51 Tenn.App. 1, 364 S.W.2d 97 (Ct.App.1962) (failure to recall execution does not in and of itself invalidate deed if the deed was grantor's free act, *knowingly* and voluntarily made).

Sitting as a court of equity, this court is compelled to impress a constructive trust on an undivided one-half interest in Lot 23 and the 4.89-acre lot for the benefit of defendant. The court thus finds that Crabtree Holding Company, Inc. holds a one-half undivided interest in Lot 23 and the 4.89-acre Ridgeland Subdivision lots in constructive trust for the benefit of defendant. Plaintiff will be required to execute an appropriate warranty deed conveying defendant's one-half undivided interest in these two lots to Brenda B. Crabtree. The April 4, 1983 quitclaim deed to both lots from David A. Crabtree to Brenda B. Crabtree recorded in book 1737, page 339 of the Knox County Register's Office, is of no force and effect and shall be cancelled.

This memorandum constitutes findings of fact and conclusions of law. Fed.R. Bankr.P. 7052.